STATE OF NORTH CAROLINA v. LOUIE CARLOS YSAGUIRE ALIAS LUIS GARCIA

No. 100A83

(Filed 6 December 1983)

**1. Jury § 2.1— denial of motion for special venire—jury for defendant's trial and for accomplice's trial selected from same venire—no abuse in discretion**

There was no abuse of discretion in the trial court's denial of defendant's motion for a special venire or for a continuance until a special venire could be obtained where, although both defendant's trial and his accomplice's trial were severed, the jury for each trial was selected from the same venire. The fact that defendant's jurors were exposed to voir dire questions by his accomplice's attorneys and to his accomplice's contentions regarding his accomplice's potential defense of insanity, and the fact that one of the jurors stated that he "assumed" defendant's accomplice had been convicted when he observed defendant's accomplice being escorted from the courtroom in handcuffs, were not sufficient to show an abuse of discretion. G.S. 15A-1240.

**2. Jury § 6.1— denial of motion for individual voir dire—no abuse of discretion**

Defendant's contention that the probing of particular jurors on voir dire regarding sensitive matters infects and taints the remainder of the venire, without more, was insufficient to support defendant's contention that the trial court abused its discretion in refusing to allow individual voir dire of the prospective jurors and sequestration of the remainder of the venire during the selection process.

**3. Criminal Law § 138— ordering prison terms to run consecutively—no violation of Fair Sentencing Act**

The imposition of consecutive sentences for the crimes of rape, first degree sex offense, first degree burglary and armed robbery did not violate either the Fair Sentencing Act or any constitutional proportionality requirement.

Justice MITCHELL concurs in result.

APPEAL by defendant from a judgment of *Judge Wiley F. Bowen*, entered at the 29 November 1982 Criminal Session of JOHNSTON Superior Court, imposing two life sentences. N.C. Gen. Stat. § 7A-30 (1981). Defendant's motion to bypass the Court of Appeals in two companion cases in which lesser sentences were given was allowed. *Id.* § 7A-31.

*Rufus L. Edmisten, Attorney General, by David Roy Blackwell, Assistant Attorney General, and Isaac T. Avery, III, Special Deputy Attorney General, for the State.*

*Thomas S. Berkau for defendant appellant.*

EXUM, Justice.

Through this appeal, defendant seeks review of his convictions and sentences for two sexual assaults, a burglary and a robbery. He contends there were errors in the process by which his jury was selected and the trial judge's imposition of consecutive sentences. We find no error in either the guilt or sentencing phases.

I.

On 2 June 1982, the victim of these crimes, a 63-year-old retired school teacher, registered and checked into a room at Johnson's Motor Lodge in Smithfield, North Carolina, stopping overnight while en route to New York from Orlando, Florida. Late that evening, she responded to a loud knocking at her motel room door. Although she barely opened the door, two men burst into the room. During the next hour, these two men repeatedly raped her by force and against her will. Both men forced her to perform fellatio on them and committed other sexual assaults. One man brandished a knife and threatened to kill her while these assaults occurred. After the sexual assaults, the two men demanded money and ransacked the victim's purse. They took cash, credit cards, and traveler's checks. Before leaving the room, they bound and gagged the victim, left her facedown on the bed, and urinated on her.

Defendant was charged in four proper indictments with first degree rape, first degree sexual offense, first degree burglary, and armed robbery. The indictments concerning the rape and sexual offenses charged that defendant used a deadly or dangerous weapon and was aided and abetted by Joe Fornocker Smith. Smith was charged in separate indictments. Upon considering the state's motion to join the two cases for trial and defendant's amended motion to sever, the court severed the cases against Smith from those against defendant. Pretrial motions for a change of venue and for a special venire were denied.

At the conclusion of the state's evidence in defendant's trial, defendant's motion to dismiss was denied. Defendant offered no evidence. The jury returned verdicts of guilty to each of the four offenses. Defendant was sentenced to two terms of life imprisonment, respectively, for the first degree rape and first degree sex-

---

State v. Ysaguire

---

ual offense convictions and two fourteen-year terms, respectively, for the burglary and armed robbery convictions. Each sentence constituted either a mandatory or presumptive sentence for the respective offense and was ordered to run consecutively.

## II.

[1] Defendant initially challenges the trial court's denial of his motion for a special venire or for a continuance until a special venire could be obtained.

Although both the instant trial and the Smith trial were severed, the jury for each trial was selected from the same venire. Defendant's trial and the Smith trial were called on 30 November 1982 during a criminal session of Johnston Superior Court. Before jury selection, the trial court denied defendant's motions to continue and for a special venire. Jury selection for defendant's trial followed jury selection for the Smith trial. Those selected as jurors and alternates for Smith's trial were then excluded from the venire and defendant's jury was selected from the remaining venire persons.

When the Smith jury was impaneled, the trial court released the remaining venire persons. Selected petit jurors were instructed not to discuss the cases. Defendant's jury was sequestered during Smith's trial.[1] When the Smith jury retired to deliberate, defendant's trial commenced. During the return of the Smith verdict and the attendant sentencing, the defendant's jury was secluded in the grand jury room.

Defendant contends that because the jurors selected for his trial were in the courtroom during jury selection for the Smith trial, his jurors were exposed to voir dire questions and to Smith's contentions regarding Smith's potential defense of insanity. This, defendant urges, so tainted the jurors who determined his guilt that they could not give him a fair trial.

Decisions on motions for a special venire or to continue until a special venire is obtained remain in the sound discretion of the

---

1. Defendant's trial counsel in arguing his motion for a new venire conceded before the trial court: "I realize the jury panel has not been in here during the course of the [Smith] trial, but the DA and . . . [Smith's] attorney . . . have made opening brief remarks about their case."

trial judge. *State v. Weimer*, 300 N.C. 642, 647, 268 S.E. 2d 216, 219 (1980). Defendant bears the burden of demonstrating an abuse of this discretion. *State v. Silhan*, 297 N.C. 660, 667, 256 S.E. 2d 702, 706 (1979); *State v. Morgan*, 9 N.C. App. 624, 177 S.E. 2d 457 (1970), *appeal dismissed*, 277 N.C. 458, 178 S.E. 2d 225 (1971). To fulfill this burden, defendant need show, at least, some actual prejudice which results from the trial court's denial of the motions and which prevents defendant from receiving a fair and impartial trial. *See State v. Boykin*, 291 N.C. 264, 229 S.E. 2d 914 (1976).

Defendant points to nothing in the record which supports his contentions. The record does not contain the jury selection process nor does it reveal any challenges to the trial court's decisions to seat any particular juror. The trial court's decision to select different petit juries successively from the same venire to try, respectively, Smith and defendant and to sequester defendant's jury during the Smith trial was, without more, well within the proper exercise of its discretion.

Defendant does submit the affidavit of one of his jurors, Charles Stowers. According to the affidavit, Stowers and the other jurors were in the grand jury room waiting to be called into court. Some of the jurors observed Smith being escorted from the courtroom in handcuffs. Smith's demeanor was abusive. Stowers "assumed" Smith had been convicted. He knew Smith and defendant were allegedly accomplices.

The testimony of a juror may be used to impeach his verdict only in certain limited circumstances. N.C. Gen. Stat. § 15A-1240 (1978). This statute states, in pertinent part:

(a) Upon an inquiry into the validity of a verdict, no evidence may be received to show the effect of any statement, conduct, event, or condition upon the mind of a juror or concerning the mental processes by which the verdict was determined.

. . .

(c) After the jury has dispersed, the testimony of a juror may be received to impeach the verdict of the jury on which he served, subject to the limitations in subsection (a), only when it concerns:

> (1) Matters not in evidence which came to the attention of one or more jurors under circumstances which would violate the defendant's constitutional right to confront the witnesses against him; or
>
> (2) Bribery, intimidation, or attempted bribery or intimidation of a juror.

Suffice to say that Stowers' affidavit does not reveal anything permitted by subsection (c)(1) or (2). Even if Stowers and other jurors "assumed," or knew, defendant's accomplice had been convicted, neither he nor they had been exposed to any of the evidence by which such conviction was obtained. Their mere knowledge of Smith's conviction is not enough, standing alone, to compromise their ability to listen anew to and fairly judge the evidence in defendant's case. Were it otherwise, accomplices could never be jointly tried and we could never rely, as we often do, on a jury's ability to consider independently the guilt of each defendant in a joint trial.

## III.

Defendant next challenges the trial court's refusal to allow individual voir dire of the prospective jurors and sequestration of the remainder of the venire during the selection process. This is a ruling within the trial court's discretion and absent a showing of abuse of discretion it will not be held for error. *State v. Barfield,* 298 N.C. 306, 259 S.E. 2d 510 (1979); *State v. Thomas,* 294 N.C. 105, 240 S.E. 2d 426 (1977). The record contains none of the voir dire proceedings. It reveals nothing about any juror's knowledge of the evidence in the instant case or in the Smith case. In essence, defendant suggests that the probing of potential jurors on voir dire regarding sensitive matters infects and taints the remainder of the venire. That speculation, without more, will not support a challenge to the trial court's discretion. *Barfield,* 298 N.C. at 323, 259 S.E. 2d at 526. *See State v. Johnson,* 298 N.C. 355, 259 S.E. 2d 752 (1979).

## IV.

[2] In defendant's final assignment of error,[2] he challenges the sentencing judge's decision to order each of the four prison terms

2. Defendant also assigned error to the trial court's denial of his motion to dismiss at the close of all the evidence based upon insufficiency of the evidence and

to run consecutively. Defendant contends this decision violates the North Carolina Fair Sentencing Act, N.C. Gen. Stat., ch. 15A, Art. 81A, and the United States Constitution. We disagree.

The Fair Sentencing Act represents the General Assembly's reaction to what it perceived as unjustified disparity in criminal sentencing. *See* Comment, *Criminal Procedure—The North Carolina Fair Sentencing Act,* 60 N.C. L. Rev. 631 (1982). Through the use of presumptive terms of imprisonment for various classifications of criminal offenses, the legislature attempted to promote more uniformity in sentencing. In the absence of explicit aggravating or mitigating circumstances, persons who commit similar criminal acts are to be similarly sentenced. Although the General Assembly did not address the issue of consecutive sentences in the Fair Sentencing Act, it left substantially intact another statute which vests the sentencing judge with discretion to impose either consecutive or concurrent sentences. N.C. Gen. Stat. § 15A-1354(a) (1978). Since that statute was in effect when the legislature enacted the Fair Sentencing Act, the legislature by leaving it substantially intact must have intended that the sentencing judge retain the discretion to impose sentences consecutively or concurrently. One commentator, in an exhaustive study of the operation of the Fair Sentencing Act, notes that the sentencing judge under section 1354(a) "may also decide whether terms are to run consecutively or concurrently for multiple offenses." 60 N.C. L. Rev. at 636. Leaving sentencing judges with unbridled discretion on the matter of whether to run multiple sentences concurrently or consecutively conflicts with the general theory of uniformity sought by fair sentencing. Nevertheless, our legislature, in espousing both the spirit and the letter of fair sentencing in North Carolina, elected to incorporate the freedom for judges to impose consecutive sentences. Since that is the prerogative of the legislature, we find nothing inherent in consecutive sentencing which violates our Fair Sentencing Act.

---

his motion *in limine* to require the victim to avoid referring to defendant as a Mexican while she testified. In his brief, defendant concedes that sufficient evidence existed to permit tie case to go to the jury and that the victim never referred to defendant as a Mexican during her testimony. Accordingly, he concedes these assignments of error are without merit. In an abundance of caution, we have reviewed the record with an eye toward these two contentions. We are satisfied both that sufficient evidence existed and that no reference to defendant being Mexican was made by the victim during her testimony.

[3]  Defendant seeks a proportionality analysis of his sentences. Although he cites no authority in support of his request, we recognize that under the Eighth Amendment "a criminal sentence must be proportionate to the crime for which the defendant has been convicted." *Solem v. Helm,* --- U.S. ---, ---, 103 S.Ct. 3001, 3009 (1983). We need determine, therefore, whether the imposition of consecutive sentences against defendant resulted in a punishment so grossly disproportionate to the crimes committed that it violates the Eighth Amendment.

In undertaking this analysis, we are guided by the axiom that ordinarily on sentencing decisions appellate courts do not substitute their judgment for that of the trial court.

> Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence; rather, in applying the Eighth Amendment the appellate court decides only whether the sentence under review is within constitutional limits. In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate.

*Id.* n. 16.[3] Only in exceedingly unusual non-capital cases will the sentences imposed be so grossly disproportionate as to violate the Eighth Amendment's proscription of cruel and unusual punishment.

The imposition of consecutive life sentences, standing alone, does not constitute cruel or unusual punishment. *See State v. Bruce,* 268 N.C. 174, 150 S.E. 2d 216 (1966). A defendant may be convicted of and sentenced for each specific criminal act which he commits. *See State v. Revelle,* 301 N.C. 153, 270 S.E. 2d 476 (1980).

---

3. We recognize that in capital cases this Court has been authorized by statute, in effect, to oversee a jury's determination that the death penalty is an appropriate sentence. N.C. Gen. Stat. § 15A-2000(d). We have been given no such authorization in non-capital cases. In non-capital cases we do not, and are not required to, conduct factual comparisons of different cases to determine whether a given sentence is constitutional.

Here, we place great weight on the gravity of the offenses. *See Solem,* 103 S.Ct. at 3010. The jury convicted defendant of four specific and distinct criminal acts. These acts constitute some of the most serious crimes recognized by our statutes. In each offense he was aided and abetted by an accomplice and a deadly weapon was used. Defendant received either the mandatory (in the rape and sex offense cases) or the presumptive sentence (in the burglary and armed robbery cases) for each offense. There was also no evidence indicating that these offenses were committed negligently or under duress or provocation. *See id.* at 3011.

Even a cursory review of multiple offense cases in which a rape was committed reveals that consecutive sentences are frequently imposed.[4] *See generally State v. Waters,* 308 N.C. 348, 302 S.E. 2d 188 (1983); *State v. Chatman,* 308 N.C. 170, 301 S.E. 2d 71 (1983); *State v. Corbett,* 309 N.C. 382, 307 S.E. 2d 139 (1983); *State v. Pratt,* 306 N.C. 673, 295 S.E. 2d 462 (1982); *State v. See,* 301 N.C. 388, 271 S.E. 2d 282 (1980) (each involving consecutive life sentences for first degree rape and another offense). Defendant's consecutive sentences do not represent an unusual punishment in North Carolina.

While the consecutive running of these sentences means defendant will serve a considerable period of incarceration before becoming eligible for parole, we find nothing so grossly disproportionate in this sentencing judgment for these criminal offenses to justify our upsetting via the Eighth Amendment the traditional sentencing prerogatives of the legislature and the trial court. *See Rummel v. Estelle,* 445 U.S. 263, 274 (1980).

Accordingly, we hold that the imposition of consecutive sentences for the crimes of rape, first degree sex offense, first degree burglary and armed robbery violates neither the Fair Sentencing Act nor any constitutional proportionality requirement.

Defendant received a fair trial free from prejudicial error and sentences which conform both to our statutes and any appli-

---

4. Defendant offers no authority regarding the imposition of consecutive sentences on him. He simply refers to one instance where another defendant in an unrelated case received a life sentence for first degree murder. We find defendant's attempted comparison unpersuasive.

cable constitutional provisions. Accordingly, in the proceedings below we find

No error.

Justice MITCHELL concurs in result.