STATE OF NORTH CAROLINA v. JAMES HARPER

No. 885SC896

(Filed 17 October 1989)

1. **Criminal Law § 73.2 (NCI3d)— undercover officer's written notes—no inadmissible double hearsay**

    There was no merit to defendant's contention that an undercover officer's written notes summarizing alleged drug transactions with defendant included statements of third persons who did not testify at trial and thus contained inadmissible double hearsay, since the statements of the third party declarants were not offered for their truth but to explain the officer's conduct, and they were thus not objectionable as hearsay.

    **Am Jur 2d, Evidence §§ 991-998, 1002.**

2. **Criminal Law § 73 (NCI3d)— undercover officer's notes—inadmissible hearsay**

    Summaries by an undercover officer of alleged drug transactions with defendant were hearsay and inadmissible as substantive evidence, since, in criminal cases, matters observed by police officers and other law enforcement personnel are explicitly excluded from the operation of Rule 803(8) of the N.C. Rules of Evidence which excepts public records and reports from the hearsay rule.

    **Am Jur 2d, Evidence §§ 991-998, 1002.**

3. **Criminal Law § 33.3 (NCI3d)— record from another case excluded—evidence irrelevant**

    There was no merit to defendant's contention that the trial judge erred in failing to admit into evidence the record from a case against another resident of the boarding house where defendant lived showing that the State took a voluntary dismissal of the charges against her, since the fact that the

STATE v. HARPER

[96 N.C. App. 36 (1989)]

State took a voluntary dismissal in a separate case was irrelevant in the action against defendant.

**Am Jur 2d, Evidence §§ 973 et seq.**

4. **Criminal Law § 33.3 (NCI3d) — presence of defendant's fellow boarding house residents at trial — evidence improperly admitted — defendant not prejudiced**

Though the trial court erred in permitting testimony regarding the presence in the courtroom of two of the women from the boarding house where defendant lived and where alleged drug transactions took place, such error was harmless because defendant failed to show that there was a reasonable possibility that the outcome of the trial would have been different without the error.

**Am Jur 2d, Trial §§ 61-67.**

5. **Criminal Law § 874 (NCI4th) — jury's request to repeat instructions — court's refusal — additional instructions given — no error**

The trial judge did not abuse his discretion in refusing to repeat instructions on burden of proof in response to a question raised by the jury during deliberations, since it did not appear from the jurors' question that they were confused about the burden of proof, and the additional instructions which the court did give were not of such a nature as to give undue emphasis to the State's case. N.C.G.S. § 15A-1234(a)(1).

**Am Jur 2d, Trial §§ 641-644, 754-757, 935.**

6. **Criminal Law § 1185 (NCI4th) — aggravating factor of prior conviction — what constitutes prior conviction**

There was no merit to defendant's contention that his single prior conviction was for a relatively minor crime and that the trial judge therefore abused his discretion in finding it as an aggravating factor, since the legislature has determined that conviction of any criminal offense punishable by more than 60 days' confinement is an aggravating factor. N.C.G.S. § 15A-1340.4(a)(1)o.

**Am Jur 2d, Criminal Law §§ 525, 535 et seq., 598, 599.**

**7. Criminal Law § 1203 (NCI4th)— failure to find nonstatutory mitigating factors—no abuse of discretion**

There was no merit to defendant's contention that the trial judge erred in finding no factors in mitigation, since the consideration of nonstatutory mitigating factors is within the trial judge's discretion, and the judge's failure to find nonstatutory mitigating factors, even when supported by uncontradicted, substantial, and manifestly credible evidence, will not be disturbed absent a showing of an abuse of that discretion.

**Am Jur 2d, Criminal Law §§ 525, 535 et seq., 598, 599.**

**8. Criminal Law § 1347 (NCI4th)— consecutive sentences— cumulative effect not disproportionate to crimes**

There was no merit to defendant's contention that the cumulative effect of the consecutive sentences was disproportionate to his crimes and that as such his sentence violated the Eighth Amendment prohibition against cruel and unusual punishment, since the decision to impose consecutive sentences was discretionary with the trial judge.

**Am Jur 2d, Criminal Law §§ 552, 625-631.**

**9. Criminal Law § 1068 (NCI4th)— sentencing hearing—reputation of boarding house where defendant lived—inadmissible hearsay—defendant not prejudiced**

The trial judge erred in permitting the district attorney to express at the sentencing hearing his opinion regarding the reputation of the boarding house where defendant lived as a place where drugs were available and to refer to a 1981 opinion of the Court of Appeals discussing generally the reputation of the same boarding house involved here, since such evidence was inadmissible hearsay, but defendant was not prejudiced where the trial judge stated that he would not charge the reputation of the boarding house to defendant, and nothing in the record suggested that he did.

**Am Jur 2d, Criminal Law §§ 527, 530; Trial §§ 193, 195.**

APPEAL by defendant from judgment entered 30 March 1988 in NEW HANOVER County Superior Court, by *Judge Samuel T. Currin.* Heard in the Court of Appeals 21 March 1989.

STATE v. HARPER

[96 N.C. App. 36 (1989)]

*Attorney General Lacy H. Thornburg, by Associate Attorney General Jane T. Friedensen, for the State.*

*J. H. Corpening, II for defendant-appellant.*

BECTON, Judge.

The defendant, James Harper, was convicted of possession with intent to sell and deliver marijuana and sale and delivery of marijuana. Harper contends on appeal that the trial judge erred by: (1) admitting in evidence the undercover officer's written summaries of the two drug transactions with Harper since the summaries contained inadmissible hearsay; (2) permitting testimony regarding the presence of certain spectators in the courtroom; (3) failing to admit a proffered exhibit in evidence; (4) failing to repeat certain instructions in response to a question from the jury; (5) permitting testimony at the sentencing hearing that "the green house" (the boarding house where Harper lived and worked) was reputed to be a place where drugs were readily available; and (6) sentencing Harper to two consecutive five-year prison terms, the maximum penalty allowable for Harper's offenses. We affirm the judgment below.

I

Harper contends that the judge committed prejudicial error by admitting in evidence State's Exhibits 4 and 8, the undercover officer's written notes summarizing the alleged drug transactions with Harper. Harper contends that the summaries included statements of third persons who did not testify at trial and thus contained inadmissible double hearsay. He further argues that the summaries themselves were inadmissible hearsay.

The notes related the events surrounding two drug sales which took place on the afternoons of 13 June and 27 June 1987, outside a house on Harnett Street in Wilmington known as "the green house." The summaries included statements made by "Pee Wee," "Pee Wee's mother," "an unknown voice," "an unknown black female," "the lady on the porch," and "an unknown black male" (later identified as Harper). The summaries described these individuals guiding the undercover officer into the house, and then outside to a clump of bushes where Harper sold him the marijuana. With the exception of Harper and the unknown female "complaining about having to stand out there holding the drugs, and the possibility of the law

busting them," the substance of the third parties' statements recorded in the notes was limited to telling the officer to wait, to go ahead, and where to go. At trial, the officer testified to essentially the same facts.

[1]  As an initial matter, we conclude that there was no hearsay-within-hearsay problem presented here because the statements of the third party declarants were not offered for their truth, but to explain the officer's conduct. *See State v. White*, 298 N.C. 430, 437, 259 S.E.2d 281, 286 (1979) (statements of one person to another are admissible to explain the subsequent conduct of the person to whom the statement was made). Out-of-court statements offered for any purpose other than to prove the truth of the matter asserted are not objectionable as hearsay. *See id.; State v. Wilson*, 322 N.C. 117, 137, 367 S.E.2d 589, 601 (1988); N.C. Gen. Stat. Sec. 8C-1, R. Evid. 801(c) (1988). *See also* Brandis, 1 *Brandis on North Carolina Evidence* Sec. 141 (3d ed. 1988).

[2]  We agree with Harper's next argument that the summaries themselves were hearsay and therefore were inadmissible as substantive evidence. Rule 803(8) of the North Carolina Rules of Evidence excepts public records and reports from the hearsay rule. *See* N.C. Gen. Stat. Sec. 8C-1, R. Evid. 803(8) (1988). Among the public records outside the hearsay rule are those "setting forth . . . matters observed pursuant to duty imposed by law as to which there was a duty to report. . . ." Sec. 8C-1, R. Evid. 803(8)(B). However, "in criminal cases[,] matters observed by police officers and other law-enforcement personnel" are explicitly excluded from the Rule's broad sweep. *Id.; see State v. Maness*, 321 N.C. 454, 459, 364 S.E.2d 349, 351 (1988).

The rationale behind the exclusion of police reports is to prevent "prosecutors [from] attempting to prove their cases in chief simply by putting into evidence police officers' reports of their contemporaneous observations of crime." *United States v. Grady*, 544 F.2d 598, 604 (2d Cir. 1976); *see also State v. Smith*, 312 N.C. 361, 323 S.E.2d 316 (1984). The underlying theory is that "observations by police officers at the scene of the crime . . . [may not be] as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the police and the defendant in criminal cases." Weinstein & Berger, 4 *Weinstein's Evidence* Sec. 803(8)[01] (1988) (quoting Senate Comm. on the Judiciary, 93d Cong., 2d Sess. (1974) ). This exclusion is in

general accord with cases decided prior to the adoption of the rules of evidence. *See, e.g., State v. Jackson,* 287 N.C. 470, 482, 215 S.E.2d 123, 130 (1975) (search warrant and supporting affidavit inadmissible hearsay; admission deprived criminal defendant of right of confrontation and cross-examination, and permitted State to strengthen its case with incompetent evidence; officer did not testify); *State v. Spillars,* 280 N.C. 341, 352, 185 S.E.2d 881, 888 (1972) (same). *Cf. United States v. Coleman,* 631 F.2d 908, 912 (D.C. Cir. 1980) (recognizing distinction between records containing a *summary* of the government's case against a criminal defendant and other police records such as those needed to establish chain of custody).

Although we conclude that the summaries were inadmissible as substantive evidence, this does not mean that Harper was so prejudiced by that evidence that he is entitled to a new trial. *See State v. Locklear,* 322 N.C. 349, 360, 368 S.E.2d 377, 384 (1988). This was a direct sales case. The undercover officer testified that Harper was the man he saw at the green house and from whom he purchased marijuana on two occasions, during daylight hours. Given this direct evidence, we cannot say that a reasonable possibility exists that a different result would have obtained had the summaries not been admitted. *See* N.C. Gen. Stat. Sec. 15A-1443(a) (1988); *State v. Galloway,* 304 N.C. 485, 496, 284 S.E.2d 509, 516 (1981).

For the reasons stated, we overrule this assignment of error.

.. II

[3] Harper contends that the trial judge erred in failing to admit in evidence Defendant's Exhibit 1, the record from a case against another resident of the boarding house, showing that the State took a voluntary dismissal of the charges against her. This contention is without merit. The fact that the State took a voluntary dismissal in a separate case was irrelevant in the action against Harper. Irrelevant evidence is inadmissible. N.C. Gen. Stat. 8C-1, R. Evid. 402 (1988).

III

[4] Harper next asserts that the judge erred in permitting testimony regarding the presence in the courtroom of two of the women from the green house. The undercover officer had already identified the women when he testified about the series of events at the green house, and, in response to questions by the district

attorney, he testified that he did not notify the women to appear at trial and did not know they would be there. Harper did not object to this testimony. The district attorney later asked a detective who worked on the case if he had asked the women to appear in court, and he said no. Harper's relevancy objection was overruled. When Harper took the stand, he testified that he did not ask the women to be there but that "[t]hey came for the goodness of them."

Harper now argues that the questions elicited irrelevant testimony and "called on the jury to engage in suspicion and conjecture as to why [the women] were present." We agree. This evidence was irrelevant because "it did not have 'any tendency to make the existence of any fact . . . of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *State v. Brown,* 319 N.C. 361, 366, 354 S.E.2d 225, 227 (1987) (quoting Sec. 8C-1, R. Evid. 401). However, admission of irrelevant evidence will be treated as harmless unless the defendant shows that he was so prejudiced by the erroneous admission that a different result would have ensued if the evidence had been excluded. *See State v. Gappins,* 320 N.C. 64, 68, 357 S.E.2d 654, 657 (1987); Sec. 15A-1443(a). In light of the direct evidence against him, Harper has failed to show that there was a reasonable possibility that the outcome of the trial would have been different without the error.

IV

[5] Harper asserts that the judge erred in refusing to repeat certain instructions in response to a question raised by the jury during deliberations. The jury asked this question: "The defendant's attorney brought up the fact that the defendant has a scar on his face in his closing argument. Can this be considered in as much as it was not presented in evidence during the trial?" The trial judge then instructed the jury, in essence, that arguments of counsel were not to be considered as evidence, but that jurors could consider anything they observed in the courtroom during the course of the trial. Harper does not argue that these instructions were erroneous; instead he contends that the judge should have repeated instructions given to the jury in the original charge regarding (1) the burden of proof in general and (2) the State's burden of proving the identity of the defendant as the perpetrator of the crime.

STATE v. HARPER

[96 N.C. App. 36 (1989)]

N.C. Gen. Stat. Sec. 15A-1234(a)(1) (1988) permits the trial judge to give additional instructions in response to a question by the jury after deliberations have begun. If additional instructions are given, the judge "*may* also . . . repeat other instructions to avoid giving undue prominence to the additional instructions." Sec. 15A-1234(b) (emphasis added). The trial judge is not required to repeat instructions correctly given during the original charge, but may do so in his discretion. *See State v. Prevette*, 317 N.C. 148, 164, 345 S.E.2d 159, 169 (1986). The judge is in the best position to determine whether instructions should be repeated, and, in the absence of error in the original charge, " 'needless repetition is undesirable and has been held erroneous on occasion.' " *Id.* (citation omitted). Here, it did not appear from the jurors' question that they were confused about the burden of proof. Nor were the additional instructions of a nature to give undue emphasis to the State's case. Accordingly, we hold that the judge did not abuse his discretion in denying Harper's request to repeat the instructions.

V

Harper challenges the judge's ruling sentencing him to two consecutive five-year prison terms.

A

At the sentencing hearing, the judge found only one aggravating factor, prior conviction of a crime punishable by more than 60 days' confinement. Finding no factors in mitigation, the judge concluded that the aggravating factors outweighed the mitigating factors, and imposed the maximum five-year sentence for both of the crimes charged. The judge then ordered that the sentences run consecutively.

[6] Harper argues that his single prior conviction was for a relatively minor crime (misdemeanor assault with a deadly weapon) and, therefore, that the judge abused his discretion in finding it as an aggravating factor. We reject this contention. With minor exceptions not relevant here, the legislature has determined that conviction of *any* criminal offense punishable by more than 60 days' confinement is an aggravating factor. *See* N.C. Gen. Stat. Sec. 15A-1340.4(a)(1)(o) (1988). We cannot substitute our judgment for the legislature's by holding that the offense Harper was convicted of was so inconsequential that it should not have been found to be

an aggravating factor. *See State v. Parker,* 319 N.C. 444, 448, 355 S.E.2d 489, 491 (1987).

**[7]** Harper also contends that the judge erred in finding no factors in mitigation. Harper asserts that the judge should have found the following to be nonstatutory mitigating factors: (1) Harper's age (43 years) at the time of the offense; (2) Harper's status as a lifelong resident of Wilmington with only one minor conviction; and (3) the small amount of marijuana involved in the drug sales. We disagree. The consideration of nonstatutory mitigating factors is within the trial judge's discretion. *State v. Canty,* 321 N.C. 520, 524, 364 S.E.2d 410, 413 (1988). The judge's failure to find nonstatutory mitigating factors, even when supported by uncontradicted, substantial, and manifestly credible evidence, will not be disturbed absent a showing of an abuse of that discretion. *See State v. Spears,* 314 N.C. 319, 322-23, 333 S.E.2d 242, 244 (1985).

B

**[8]** Harper next argues that the cumulative effect of the consecutive sentences is disproportionate to his crimes, and as such, that his sentence violates the Eighth Amendment prohibition of cruel and unusual punishment. *See, e.g., State v. Ysaguire,* 309 N.C. 780, 786, 309 S.E.2d 436, 441 (1983). We are compelled to disagree, however, because the decision whether to impose consecutive sentences was discretionary with the trial judge, and we cannot say that here it could not have been the result of a reasoned decision. *See* N.C. Gen. Stat. Sec. 15A-1354(a) (1988).

A defendant may be sentenced for each specific criminal act he commits, and consecutive sentences do not represent an unusual punishment in North Carolina. *Ysaguire,* 309 N.C. at 786-87, 309 S.E.2d at 441. Here, there was no error in the findings of aggravation and mitigation, and each sentence imposed was within the statutory maximum. *See State v. Ahearn,* 307 N.C. 584, 597-98, 300 S.E.2d 689, 697-98 (1983); *see also State v. Higginbottom,* 312 N.C. 760, 763, 324 S.E.2d 834, 837 (1985) (punishment within statutory maximum not cruel and unusual unless punishment provisions in the statute itself are unconstitutional). This case is not, as Harper contends, an "exceedingly unusual non-capital case" in which the sentence imposed was so grossly disproportionate to the crime charged that it violates the constitutional proscription of cruel and unusual punishment. *See Ysaguire,* 309 N.C. at 786, 309 S.E.2d at 441. This assignment of error is overruled.

**[9]** Harper last contends that the trial judge erred in permitting the district attorney to express at the sentencing hearing his opinion regarding the reputation of the green house as a place where drugs were available, and to refer to a passage from *State v. Lee*, 51 N.C. App. 344, 276 S.E.2d 501 (1981), discussing generally the reputation of the same "green house" involved here. We agree. "[I]n a criminal prosecution evidence of the reputation of a place or neighborhood is ordinarily inadmissible hearsay." *State v. Weldon*, 314 N.C. 401, 408, 333 S.E.2d 701, 705 (1985). However, the judge stated that he would not charge the reputation of the green house to Harper, and nothing in the record suggests that he did. As discussed above, Harper's sentence was within the maximum prescribed for his offenses and was sufficiently supported by the finding of one factor in aggravation and no factors in mitigation.

We hold that the trial received by the defendant James Harper was without prejudicial error.

Affirmed.

Judges JOHNSON and ORR concur.