STATE OF NORTH CAROLINA v. ERICA LASHELL McLEAN

No. COA09-1602

(Filed 6 July 2010)

**1. Identification of Defendants— photos in lineup—compiled by routine procedure**

There was no plain error in the admission of testimony identifying defendant as the person in the photo selected by an undercover officer after a drug buy. The photos the undercover officer examined were taken and compiled as a routine procedure following arrests and were not indicative of anything more than that the person photographed had been arrested. They were nontestimonial in nature.

**2. Criminal Law— instructions—expert witness testimony—giving instruction not prejudicial**

The trial court did not err in a cocaine prosecution by giving the jury an instruction on how it should consider expert witness testimony as to an SBI Agent. Although defendant argued that the witness did not give an expert opinion on whether the substance tested was cocaine, the witness in fact offered her opinion to explain the standard operating procedures followed by the SBI lab. Even assuming that the agent did not offer expert opinions, defendant was not prejudiced because the jury was entitled and instructed to give whatever weight they deemed appropriate to the testimony. The results of the lab report were admitted independently of this agent's testimony.

Appeal by defendant from judgments entered 26 May 2009 by Judge Richard T. Brown in Lee County Superior Court. Heard in the Court of Appeals 26 May 2010.

*Attorney General Roy Cooper, by Assistant Attorney General James M. Stanley, Jr., for the State.*

*Michele Goldman for defendant-appellant.*

STEELMAN, Judge.

The trial court's admission of testimony into evidence that linked defendant's name to a photograph in the Sanford Police Department photo database did not constitute error, much less plain error. It was

not error for the trial court to instruct the jury on how to consider expert testimony based upon the testimony of Special Agent West.

## I. Factual and Procedural Background

On 9 May 2006, Deputy Frank McDaniel (McDaniel) was working undercover with the City-County Drug Unit of the Lee County Sheriff's Office. On that day, McDaniel made a street-level drug buy at 106 Pearl Street in Lee County. After completing the buy, McDaniel returned to a predetermined location and was debriefed by Officer Ray Bullard (Bullard), a narcotics investigator with the Sanford Police Department. During this debriefing session, McDaniel described the individual from whom he purchased crack cocaine. Bullard loaded a series of lineup photos from the Sanford Police Department's database on his laptop that matched the description given by McDaniel, and McDaniel selected the photograph of Erica Lashell McLean from a lineup. Bullard cross-referenced the photograph in the database and determined that the person identified by McDaniel was defendant.

The substance obtained by McDaniel was tested by Todd Huml (Huml) at the State Bureau of Investigation (SBI) laboratory and determined to be cocaine. Huml did not testify at trial. Special Agent Jennifer West (Agent West) was qualified as an expert in the field of forensic drug chemistry and testified at trial.

Defendant was indicted for felony maintaining a dwelling for keeping and selling of a controlled substance, possession of drug paraphernalia, possession with intent to manufacture, sell, and deliver a controlled substance (PWISD), and sale and delivery of a controlled substance.

On 26 May 2009, a jury found defendant guilty of possession with intent to sell and deliver cocaine, sale and delivery of cocaine, and possession of drug paraphernalia. The felony maintaining charge was voluntarily dismissed by the State prior to trial. Defendant was sentenced to 12-15 months imprisonment on the sale and delivery count and a consecutive sentence of 8-10 months on the remaining two charges. These sentences were suspended, and defendant was placed on probation for 36 months upon regular and special conditions of probation.

Defendant appeals.

**STATE v. McLEAN**

[205 N.C. App. 247 (2010)]

## II.  Whether the Trial Court's Admission of Purported Hearsay Evidence Constituted Plain Error

[1] In her first argument, defendant contends that the trial court's admission of purported hearsay evidence linking her to the photograph identified by McDaniel constituted plain error. We disagree.

### A.  Standard of Review

The admissibility of evidence at trial is a question of law and is reviewed *de novo. State v. Wilkerson*, 363 N.C. 382, 434, 683 S.E.2d 174, 205 (2009). When a defendant fails to object at trial to the improper admission of evidence, the reviewing court determines if the erroneously admitted evidence constitutes plain error. *State v. Locklear*, 172 N.C. App. 249, 259, 616 S.E.2d 334, 341 (2005). Plain error is a "*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done." *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002, *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)) (emphasis in original). In determining whether the error rises to plain error, the appellate court examines the entire record and decides whether the "error had a probable impact on the jury's finding of guilt." *Id.* at 661, 300 S.E.2d at 379.

### B.  Hearsay & Plain Error

Defendant contends that the following testimony from Bullard and McDaniel was inadmissible hearsay:

Bullard:

Q.  Okay. And if you would, can you tell me what occurred as you were working with Deputy Frank McDaniel on Tuesday, May the 9th, 2006?

A.  [Description of the events prior to the identification] Officer McDaniel viewed the photographs. He identified the subject that he had just purchased crack cocaine from as photograph No. 2308. At that time I crossed-referenced that over and it was a photograph of Erica Lashell McLean.

McDaniel:

Q.  Did Agent Bullard tell you who—the picture you identified on that day?

A.  Yeah, it was known that it was Erica McLean.

The State contends that the foregoing testimony is admissible hearsay under either exception (6) (business records) or exception (8) (public records) set forth in N.C. Gen. Stat. §8C-1, Rule 803 (2009). Under Exception (8), the following are admissible:

> Public Records and Reports.—Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law-enforcement personnel, or (C) in civil actions and proceedings and against the State in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate a lack of trustworthiness.

N.C. Gen. Stat. §8C-1, Rule 803(8) (2009).

When North Carolina rules of evidence parallel their federal counterparts, our appellate courts have frequently looked to federal decisions for additional guidance. *State v. Thompson*, 332 N.C. 204, 219, 420 S.E.2d 395, 403 (1992). As North Carolina Rule of Evidence 803(8) differs from the federal rule only in using "State" in place of "government," federal decisions provide us with meaningful guidance.

In excluding matters observed by police officers and other law enforcement personnel from exception (8), Congress "intended to [exclude] observations made by law enforcement officials at the scene of a crime or the apprehension of the accused and not 'records of routine, non-adversarial matters' made in a non-adversarial setting." *United States v. Pena-Gutierrez*, 222 F.3d 1080, 1087 (9th Cir. 2000) (citing *United States v. Wilmer*, 799 F.2d 495, 501 (9th Cir. 1986), *cert. denied*, 481 U.S. 1004, 95 L. Ed. 2d 200 (1987)), *cert. denied*, 531 U.S. 1057, 148 L. Ed. 2d 570 (2000).

Our Supreme Court has agreed with the majority of other courts that the intended purpose of Rule 803(8) was not to change the common law rule allowing admission of public records of purely "ministerial observations," but instead to prevent prosecutors from attempting to prove their cases in chief by simply putting into evidence police officers' reports of their contemporaneous observations of crime. *State v. Smith*, 312 N.C. 361, 380-81, 323 S.E.2d 316, 327-28 (1984)

(citing *State v. Smith*, 66 Ore. App. 703, 706, 675 P.2d 510, 512 (1984); *United States v. Grady*, 544 F.2d 598, 604 (2d Cir. 1976)).

The underlying theory behind excluding hearsay observations of police officers at the scene of the crime is that they may not be as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the police and the defendant in criminal cases. *State v. Harper*, 96 N.C. App. 36, 40, 384 S.E.2d 297, 299 (1989) (citation omitted). For example, the notes of a non-testifying, undercover officer summarizing alleged drug transactions with a defendant were held to be inadmissible pursuant to Rule 803(8)(B). *Id.* Similarly, a defendant's exculpatory statements contained in a police report were held inadmissible under Rule 803(8) as a matter "observed by police officers." *State v. Maness*, 321 N.C. 454, 459, 364 S.E.2d 349, 351 (1988).

However, fingerprinting and photographing a suspect, and cataloguing a judgment and sentence, are the types of routine and unambiguous matters which the public records hearsay exception in Rule 803(8) is designed to allow, and were not meant to be prohibited by the exclusion in subsection (B). *United States v. Weiland*, 420 F.3d 1062, 1075 (9th Cir. 2005), *cert. denied*, 547 U.S. 1114, 164 L. Ed. 2d 667 (2006); *see also, State v. Windley*, 173 N.C. App. 187, 193-94, 617 S.E.2d 682, 686 (2005) (holding that law enforcement record cards allegedly bearing defendant's fingerprints were non-testimonial in nature), *cert. denied and disc. review denied*, 360 N.C. 295, 629 S.E.2d 288 (2006); *United States v. Dowdell*, 595 F.3d 50, 72 (1st Cir. 2010) (holding that a booking sheet does not recount the work that led to an arrest so much as the mere fact that an arrest occurred, and thus constituted a non-adversarial, ministerial observation that was not excluded by Rule 803(8)(B)).

In the instant case, the photos in the Sanford Police Department's photo database were taken and compiled as a routine procedure following an arrest. As in *Dowdell*, these photos are not indicative of anything more than that the person photographed has been arrested, and are thus non-testimonial in nature. As noted in *Weiland*, photographing an arrested suspect is a routine and unambiguous record that Rule 803(8) was designed to cover. Absent evidence to the contrary, there is no reason to suspect the reliability of these records, as they are not subject to the same potential subjectivity that may imbue the observations of a police officer in the course of an investigation. Accordingly, these photos fall under the permissible scope of Rule

803(8), and the admission of the testimony identifying defendant as the person in the photo selected by McDaniel was not error.

This argument is without merit.

### III. Whether the Jury Instruction Prejudiced Defendant

**[2]** In her second argument, defendant contends that the trial court erred in giving the jury an instruction on how it should consider expert witness testimony as to the testimony of Agent West because she did not give an expert opinion that the substance tested by Huml was cocaine. We disagree.

### A. Standard of Review

Assignments of error challenging the trial court's decisions regarding jury instructions are reviewed *de novo* by this Court. *State v. Osorio,* 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009). A defendant is prejudiced when there is a reasonable possibility that, had the error not been committed, a different result would have been reached at trial. N.C. Gen. Stat. §15A-1443(a) (2009). The burden of showing such prejudice is on defendant. *Id.* When reviewing jury instructions,

> [they] will be construed contextually, and isolated portions will not be held prejudicial when the charge as [a] whole is correct. If the charge presents the law fairly and clearly to the jury, the fact that some expressions, standing alone, might be considered erroneous will afford no ground for reversal.

*State v. Rich,* 351 N.C. 386, 394, 527 S.E.2d 299, 303 (2000) (quoting *State v. Lee,* 277 N.C. 205, 214, 176 S.E.2d 765, 770 (1970)).

### B. Jury Instruction

"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." N.C. Gen. Stat. §8C-1, Rule 702(a) (2009). It is well-settled in North Carolina case law that an expert may testify to his or her own conclusions based on the testing of others in the field. *State v. Delaney,* 171 N.C. App. 141, 144, 613 S.E.2d 699, 701 (2005).

Prior to trial, the State gave notice to defendant of its intention to introduce the SBI lab report at trial pursuant to N.C. Gen. Stat. § 90-95(g)(1). Defendant failed to notify the State that she objected to

the introduction of the report pursuant to N.C. Gen. Stat. § 90-95(g)(2). The report was therefore admitted at trial without further authentication as evidence of the "identity, nature, and quantity of the matter analyzed." N.C. Gen. Stat. § 90-95(g) (2009); *State v. Steele*, 201 N.C. App. 689, 696, 689 S.E.2d 155, 161 (2010). The report stated that the material submitted to the SBI lab from the 9 May 2006 transaction contained a cocaine base with a weight of 0.2 grams.

Agent West was found to be an expert in the field of forensic drug chemistry. She testified to the typical procedures followed in performing a chemical analysis of a substance submitted to the SBI and in creating a lab report for the results of those analyses. In her testimony, she interpreted the report and offered opinions. These included that it was not unusual for evidence submitted to be held in the evidence vault at the SBI lab for five months before testing, due to the high case load and a backlog of evidence. She also testified the she did not have any reason to believe that Huml had deviated from standard operating procedures in performing the testing recorded in the report. As an expert in the field of forensic drug chemistry, she offered her opinion to explain the standard operating procedures followed in testing substances at the SBI lab. The trial court's expert witness testimony instruction to the jury was proper.

Even assuming *arguendo* that Agent West did not offer any expert opinions in her testimony, defendant was not prejudiced by the trial court giving the expert witness testimony instruction to the jury. N.C.P.I.—Crim., 104.94. The trial judge instructed the jury that "[y]ou should consider the opinion of an expert witness if one is given, but you are not bound by it. In other words, you are not required to accept an expert witness' opinion to the exclusion of the facts and circumstances disclosed by other testimony." The jury was entitled and instructed to give whatever weight they deemed appropriate to the testimony of Agent West. Defendant has not pointed to any evidence in the record that demonstrates that the jury would probably have reached a different verdict but for the instruction. The results of the laboratory report were admitted independently of Agent West's testimony.

This argument is without merit.

Defendant has failed to argue the remaining assignments of error in her brief, and they are deemed abandoned pursuant to Rule 28(b)(6) of the North Carolina Rules of Appellate Procedure.

NO ERROR.

Judges STEPHENS and HUNTER, JR., ROBERT N. concur.