## STATE v. MICHAEL LAMAR MITCHELL.

### (Filed 20 June, 1967.)

**1. Criminal Law § 26—**

Defendant's plea of former jeopardy upon his second trial obtained as a result of a post-conviction hearing upon defendant's petition is untenable.

**2. Criminal Law § 70—**

The victim's testimony that he knew defendant was the person who had taken his billfold because defendant had admitted taking the billfold *held* incompetent when the record discloses that defendant's asserted admission was made to an officer and that the victim was not even present at the time, and the identification of defendant as the culprit being the crucial question, the admission of the incompetent hearsay testimony must be held prejudicial.

**3. Criminal Law §§ 71, 79—**

Defendant's incriminating statement made upon interrogation by an officer is erroneously admitted when the evidence upon the *voir dire* discloses that the statement was made without defendant having been advised of his right to remain silent, his right to the presence of an attorney, and his right to have counsel appointed for him if he is unable to employ an attorney, and any evidence obtained as a result of such admission is also incompetent.

**4. Criminal Law § 91—**

Where testimony admitted over objection is of such an incriminating nature that its prejudicial effect cannot be erased from the minds of the jury, the court's subsequent instruction to the jury that the jury should not consider such evidence cannot be held to have cured the error.

APPEAL by defendant from *Bailey, J.,* 12 December 1966 Session of CUMBERLAND.

Defendant was convicted at the 15 June 1964 Criminal Session of Cumberland upon indictments charging felonious assault and armed robbery. In each case, the alleged vicitm was Eugene Yeatts. On the charge of armed robbery, defendant received a sentence of 7-9 years in State Prison; on the charge of felonious assault, a sentence of 5-7 years, this sentence to begin at the expiration of the sentence imposed for the armed robbery. As the result of a post-conviction hearing held under G.S. 15-217 *et seq.,* these sentences were vacated. Defendant had been tried without benefit of counsel. On 31 August 1966, a new trial was ordered on the original bills of indictment. When the case was called for retrial at the December 1966 Criminal Session, counsel for defendant moved that the charges against him be dismissed, for that "jeopardy attached to defendant at the June 15, 1964 Criminal Term of the Superior Court of Cumberland County on the two indictments. . . ." The plea of former

jeopardy was overruled, and defendant entered a plea of not guilty as to both charges. Upon the trial, the State offered evidence tending to show:

About 4:00 in the morning on 9 April 1964, the prosecuting witness, Eugene Yeatts, was seated in his automobile, which was stopped in the middle of Pearl Street near its intersection with Bragg Boulevard. Defendant Mitchell, a Negro man, was standing in the middle of the street on the driver's side. Defendant had never seen him before. Yeatts reached out to shut the door before leaving. When he did, defendant pulled a .25-caliber automatic pistol from his pocket, poked Yeatts in the ribs twice, and told him to move over in the seat. Yeatts leaned over, but before he could move to the other side, defendant shot him. The shot penetrated Yeatts' left arm, ranged up to the back of his head, came out, and went through the glass in the opposite door. Yeatts lay in the seat for an indeterminate time. Before he passed out, however, he felt someone "fumbling around in his pockets." He came to and then managed to drive off. In the meantime, defendant had disappeared. Yeatts drove up Pearl Street until he saw a porch light burning. He went to the door and requested the man who answered to call the police. The police took him to the hospital, where he discovered that his pocketbook had been taken from him.

After his wounds were treated, between 7:00 and 7:30 a.m. on 9 April 1964, the police took Yeatts to the police station, where defendant was in custody. He was directed to walk by the door of a room in which defendant and two officers were seated, to see if he could identify defendant as the man who had shot him. Yeatts identified defendant as the man. The officers had Yeatts' pocketbook, which had contained no money at the time it was taken from him. The police retained the pocketbook but gave Yeatts his driver's license from it.

About 5:00 a.m. on 9 April 1964, Officer Byers of the Fayetteville Police Department had seen defendant in a telephone booth about a mile from the intersection of Pearl Street and Bragg Boulevard. The officer was "looking for a subject," and he continued to observe defendant. He saw him step from the booth and lay a pistol down on the sidewalk. The officer placed defendant under arrest and sent him to the police station by Officer Brown. Defendant was sitting with Officer Brown in the detective's room when Yeatts identified him.

On cross-examination, the following exchange took place between Yeatts, defendant's counsel, and the judge:

"Q.   I say right now, you do not know that this man took your billfold, do you?
"A.   Yes, he did; he admitted he took it.
"MR. GILLIAM:   Motion to strike, Your Honor.
"COURT:   Denied.

### DEFENDANT'S EXCEPTION #11.

"Q.   He didn't admit it to you, did he?
"A.   I am sorry; I didn't mean to answer it that way.
"Q.   You haven't had any conversation with him directly, yourself, have you?
"A.   No. He was standing at the car there only, when he was.
"Q.   And, so your previous statement was on what somebody told you and not something you know, isn't it?
"A.   True.
"MR. GILLIAM:   Renew the motion to strike, Your Honor.
"COURT:   Denied.

### DEFENDANT'S EXCEPTION #12."

R. B. Evans, a city detective, testified in the presence of the jury that early in the morning of 9 April 1964 he saw defendant for the first time at Godwin's Realty Company on Bragg Boulevard in the custody of Officers Byers and Brown. At that time, he had a conversation with defendant. At this point in his testimony, the court excused the jury and Officer Evans told counsel and the court that he had questioned defendant at Godwin Realty Company and, as a result of his questions, defendant showed him where he had thrown Yeatts' billfold. In response to questions from the court, Evans said that he did not warn defendant of his right to remain silent before questioning him, but he did tell him that anything he said could be used *for or against* him.

The jury returned, and, over the objection of defendant, the court permitted Evans to testify that in the course of his investigation he found a billfold beside the building on the Godwin Realty Company premises. For the purpose of corroborating Yeatts, the court permitted Evans to testify that Yeatts had identified the billfold as being his.

Defendant offered no evidence. At the conclusion of the testimony, the court dismissed the charge of armed robbery, and instructed the jury as follows:

"Now, Officer Evans, while on the stand, testified as to finding a wallet, later identified by Mr. Yeatts, in the vicinity of Godwin Realty Company. So, as far as I am concerned, that evidence

.would relate only to the armed robbery charge, which I have dismissed, and I am now directing you not to regard the evidence or to consider it for any purpose whatsoever in your deliberations and I am striking that out."

The jury returned a verdict of guilty as charged in the bill of indictment charging felonious assault. From a sentence of 5-7 years, defendant appeals.

*T. W. Bruton, Attorney General; Ralph Moody, Deputy Attorney General, for the State.*
*J. Duane Gilliam for defendant.*

SHARP, J. Defendant's first assignment of error is that the court erred in overruling defendant's plea of former jeopardy. This assignment is without merit. We have repeatedly held:

"When, in either a post-conviction hearing or a *habeas corpus* proceeding, *at the prisoner's request,* the court vacates a judgment against him and directs a new trial, the prisoner waives his constitutional protection against double jeopardy, and he may be tried anew on the same indictment for the same offense. In such case, a plea of former jeopardy will avail him nothing. *State v. Hollars,* 266 N.C. 45, 145 S.E. 2d 309; *State v. Gainey,* 265 N.C. 437, 144 S.E. 2d 249; *State v. Merritt,* 264 N.C. 716, 142 S.E. 2d 687; *State v. White,* 262 N.C. 52, 136 S.E. 2d 205."

*State v. Case,* 268 N.C. 330, 332, 150 S.E. 2d 509, 511.

By Assignment of Error No. 6, defendant challenges the admissibility of Detective Evans' statement to the jury that at Godwin Realty Company he found a billfold which Yeatts identified as his. Assignment of Error No. 7, based on Exceptions 11 and 12, is that the court erred in refusing to strike from the evidence Yeatts' statement that somebody had told him defendant had admitted taking his pocketbook. These assignments of error must be sustained.

Yeatts' statement was rank and admitted hearsay. *State v. Lassiter,* 191 N.C. 210, 131 S.E. 577; Stansbury, N. C. Evidence § 138 (2d Ed., 1963). When considered in conjunction with the evidence of Detective Evans, its prejudicial effect is apparent. Evans testified, without objection, that he first saw defendant at Godwin Realty Company early in the morning of 9 April 1964. Thereafter, over objection, he testified before the jury that at Godwin Realty Company he found a billfold which Yeatts later identified as his. Although the jury did not know that defendant had told Evans where to find

Yeatts' pocketbook, it is inconceivable that the jury did not attribute the finding of Yeatts' pocketbook at Godwin Realty Company to defendant's presence there. On cross-examination, Yeatts' positive identification of defendant as the man who had robbed him was considerably shaken. To reinstate the identification, the State had a pressing need to connect defendant with Yeatts' pocketbook. This was done — but unfortunately it was done by incompetent evidence.

The court properly excluded the statement which defendant made to Detective Evans, because the investigating officer failed to warn him of his constitutional rights prior to interrogating him. *State v. Ross*, 269 N.C. 739, 153 S.E. 2d 469; *Miranda v. Arizona*, 384 U.S. 436, 86A Sup. Ct. 1602, 16 L. Ed. 2d 694. By the same token, he should also have excluded the evidence that the officers found the pocketbook at Godwin Realty Company, because they found it in consequence of the incompetent statement. *Wong Sun v. United States*, 371 U.S. 471, 83 Sup. Ct. 407, 9 L. Ed. 2d 441; *Walder v. United States*, 347 U.S. 62, 74 Sup. Ct. 354, 98 L. Ed. 503; *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319, 24 A.L.R. 1426. In *Miranda v. Arizona, supra,* the Supreme Court of the United States said with reference to an individual who had been taken into custody by law-enforcement officers:

"He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. . . . After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. *But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.*" (Emphasis added.)

*Id.* at 479, 86A Sup. Ct. at 1630, 16 L. Ed. 2d at 726.

The State argues that the error in admitting the incompetent evidence was cured by the judge's instruction to the jury not to consider it. We are constrained to hold, however, that the prejudicial effect of this evidence was not subject to withdrawal. It seems probable that the jury's verdict was based in substantial part on this evidence, notwithstanding the court's instruction that they should disregard it. *State v. Frizzelle*, 254 N.C. 457, 119 S.E. 2d 176; *State v.*

*Aldridge,* 254 N.C. 297, 118 S.E. 2d 766; *State v. Choate,* 228 N.C. 491, 46 S.E. 2d 476; 1 Strong, N. C. Index, Criminal Law § 91 (1957).
    For the errors indicated, there must be a
    New trial.