MOORE'S FERRY DEVELOPMENT CORPORATION, Plaintiff v. CITY OF HICKORY, Defendant and Third-Party Plaintiff v. MOORE'S FERRY OWNERS ASSOCIATION, INC. (aka MOORE'S FERRY HOMEOWNERS ASSOCIATION, INC.), Third-Party Defendant

No. COA03-1271

(Filed 21 September 2004)

**Cities and Towns— control of streets—easements and licenses**

Summary judgment should not have been granted for a city in an action seeking revocation of a license for a homeowner's association to build a visitor's center on the right-of-way of a newly annexed street. Although the city claimed statutory authority to grant easements and to license appliances and fixtures on rights of way, this was not an easement and the building was neither an appliance (a device or instrument) nor a fixture (it was not built by the owner of the land and the terms of the license indicate that it was to remain personal property and not pass with the land). N.C.G.S. § 160A-296(a)(6); N.C.G.S. § 160A-296(a)(8).

Appeal by plaintiff from order entered 9 May 2003 by Judge Timothy L. Patti in Catawba County Superior Court. Heard in the Court of Appeals 27 May 2004.

*Rufus F. Walker, Jr., for plaintiff-appellant.*

*Gorham, Crone, Mace & Green, by John W. Crone, III, for defendant-appellee.*

*Shumaker, Loop & Kendrick, LLP, by Steven A. Meckler, for third-party defendant.*

THORNBURG, Judge.

Plaintiff appeals from an order granting summary judgment in favor of defendant and denying a motion for summary judgment filed by plaintiff.

Facts

The record tends to establish the following: Plaintiff is a North Carolina corporation in the real estate development business. In 1985, plaintiff owned a tract of land in Catawba County and developed it into a subdivision known as the Landing at Moore's Ferry ("Old Moore's Ferry"). In January 1986, Old Moore's Ferry was

annexed into defendant's jurisdiction. Old Moore's Ferry included a guardhouse at the intersection of 3rd Street, N.W. and Icard Ferry Road. The guardhouse is located upon a small strip of land which was retained as a privately-held common area within the right-of-way for 3rd Street, N.W. Plaintiff organized a homeowners' association, Moore's Ferry Owner's Association ("Homeowners' Association"), on 28 April 1986. On or about 27 May 1994, defendant approved Phase VI of Old Moore's Ferry and in so doing accepted as a city street 42nd Avenue Drive, N.W., which ran from 3rd Street, N.W. in an easterly direction into the subdivision to its terminus as a cul-de-sac.

On or about 24 November 1998, defendant annexed a subdivision, also known as the Landing at Moore's Ferry ("New Moore's Ferry"), which was located to the east of the terminus of 42nd Avenue Drive, N.W. On 2 February 1999, defendant's City Council considered a petition to lift a moratorium on any further extension of 42nd Avenue Drive, N.W. The moratorium had been put in place to prevent extending the road to provide a connection between Old Moore's Ferry and New Moore's Ferry. The minutes from that City Council meeting reflect that members of Homeowners' Association opposed the extension of the street as they felt that the two neighborhoods were dissimilar. The City Council discussed granting a license to Homeowners' Association to build a guardhouse on 42nd Avenue Drive, N.W. at the intersection with 3rd Street, N.W. The City Council went on to approve the lifting of the moratorium and further approved a motion that directed defendant's attorney to draft a licensing agreement to govern the construction and maintenance of a guardhouse on 42nd Avenue Drive, N.W. The draft was to be brought back to the City Council for deliberation and vote.

The right-of-way for 42nd Avenue Drive, N.W. was subsequently extended and now runs from 3rd Street, N.W. in an easterly direction through Old Moore's Ferry and New Moore's Ferry to N.C. Highway 127. On 18 July 2000, defendant's City Council approved a revocable license agreement between defendant and Homeowners' Association authorizing the construction of a visitor's information center on 42nd Avenue Drive, N.W. at the intersection with 3rd Street, N.W. The revocable license agreement, entered into on 1 August 2000, authorizes Homeowners' Association "to enter and go upon [42nd Avenue Drive, N.W.] to lay out, construct, and maintain a Visitor's Information Center . . . ." Included in the license were the following conditions:

2. [Homeowners' Association] may erect and fix in and upon [42nd Avenue Drive, N.W.] a Visitor's Information Center provided that:

a. Said Information Center in no way or manner restricts, prevents, or discourages the general public from using the road and right-of-way upon which the guardhouse is erected, generally known now as 42nd Avenue Drive, NW, Hickory, North Carolina.

The City shall review and approve any and all plans and specifications of said Information Center, but shall in no way be responsible for the construction or maintenance of same.

1. [Homeowners' Association] shall, and hereby does, indemnify and save harmless the City and any and all of its agents, servants and employees from any and all liability for injuries to, or death of any individual as a result of the construction or maintenance of said Visitor's Information Center, and [Homeowners' Association] further does indemnify and save harmless the City and any of its agents, servants or employees from any and all suits or claims which arise or may arise as a result of the construction or maintenance of said Visitor's Information Center.

2. The Visitor's Information Center shall be constructed and maintained in such a manner that it will in no way discourage, prevent, or restrict the general public from using the right of way upon which it is constructed. In addition thereto, there shall be no signs or devices to prevent or give the appearance that the Visitor's Information Center in any manner is attempting to prevent, discourage, or restrict the general public from using the right of way upon which it is located.

3. The City shall have the right to come on or about the property referenced herein at any time to monitor the Visitor's Information Center to insure that it is constructed, maintained, and used for the specific purposes and subject to the specific conditions and restrictions as set forth herein.

4. This is a purely revocable license and the City may, at any time, revoke same upon 30 days written notice of its intent to revoke.

5. Upon revocation of this license agreement, [Homeowners' Association] shall, within 90 days of the date of said revoca-

tion, remove the Information Center and leave the property in the same condition it was in prior to construction of the Information Center.

Plaintiff filed this action seeking to have the license revoked, the structure removed and damages imposed against defendant. Defendant answered and initiated a third-party complaint against Homeowners' Association for indemnification and removal of the structure should the trial court find for plaintiff. Plaintiff and defendant each moved for summary judgment on the matter. After a hearing, the trial court granted defendant's motion and denied plaintiff's motion. Plaintiff appeals.

The sole issue on appeal is whether the trial court erred by granting summary judgment on plaintiff's claim in favor of defendant. Plaintiff's claim was based upon the premise that it was unlawful for defendant to license Homeowners' Association to construct a structure in the public street right-of-way and that the structure created an obstruction of the right-of-way and a public nuisance. Plaintiff makes virtually identical arguments on appeal. Defendant argues on appeal that the structure was not a private obstruction or a public nuisance and that defendant had statutory authority to issue the license. After careful consideration of the record and briefs, we reverse and remand.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003). The purpose of summary judgment is to eliminate formal trials where only questions of law are involved by allowing summary disposition for either party when a fatal weakness in the claim or defense is exposed. *Gray v. Hager*, 69 N.C. App. 331, 317 S.E.2d 59 (1984).

### Statutory Authority

"The town authorities hold the streets in trust for the purposes of public traffic and cannot, in the absence of statutory power, grant to anyone the right to obstruct the street to the inconvenience of the public, even for public purposes, and for private purposes not at all." *Blowing Rock v. Gregorie*, 243 N.C. 364, 370, 90 S.E.2d 898, 902-03 (1956) (quoting *Butler v. Tobacco Co.*, 152 N.C. 416, 68 S.E. 12 (1910)). Defendant asserts that N.C. Gen. Stat. §§ 160A-296(a)(6) and (8) provide statutory authority for the license at issue here.

MOORE'S FERRY DEV. CORP. v. CITY OF HICKORY

[166 N.C. App. 441 (2004)]

## N.C. Gen. Stat. § 160A-296(a)(6)

N.C. Gen. Stat. § 160A-296(a)(6) provides:

(a) A city shall have general authority and control over all public streets, sidewalks, alleys, bridges, and other ways of public passage within its corporate limits except to the extent that authority and control over certain streets and bridges is vested in the Board of Transportation. General authority and control includes but is not limited to:

. . . .

(6) The power to regulate, *license*, and prohibit digging in the streets, sidewalks, or alleys, or placing therein or thereon any pipes, poles, wires, fixtures, or appliances of any kind either on, above, or below the surface.

N.C. Gen. Stat. § 160A-296(a)(6) (2003) (emphasis added). Defendant argues that the agreement is a license and that the structure in question can be classified as either a fixture or an appliance. Thus, defendant argues that this statute authorizes the granting of the license.

Our courts have not previously found it necessary to address the meaning of "appliance" in the context of a city's control of its public streets. An "appliance" is "a device or instrument, especially one operated by electricity and designed for household use." *The American Heritage Dictionary* 121 (2nd College ed. 1985). Clearly, neither this definition nor any other reasonable meaning of the word "appliance" can apply to the structure in question. Defendant's argument that the structure is an appliance fails.

A "fixture" is "personal property that is attached to land or a building and that is regarded as an irremovable part of the real property." *Black's Law Dictionary* 669 (8th ed. 2004). In *Little v. National Service Industries, Inc.*, 79 N.C. App. 688, 340 S.E.2d 510 (1986), this Court quoted the definition of a fixture found in 1 Thompson on Real Property, " '[a] fixture has been defined as that which, though originally a moveable chattel, is, by reason of its annexation to land, or association in the use of land, regarded as a part of the land, partaking of its character . . . .' " *Id.* at 692, 340 S.E.2d at 513 (quoting 1 Thompson on Real Property, 1980 Replacement, § 55 at 179 (1980)). The factors to be examined in identifying fixtures include: "(1) the manner in which the article is attached to the realty; (2) the nature of the article and the purpose for which it is attached to the realty; and

(3) the intention with which the annexation of the article to the realty is made." *Little*, 79 N.C. App. at 692, 340 S.E.2d at 513 (internal citations omitted).

In addition to these tests, "when additions are made to the land by its owner, it is generally viewed that the purpose of the addition is to enhance the value of the land, and the chattel becomes a part of the land." *Id.* (citing *Belvin v. Paper Co.*, 123 N.C. 138, 31 S.E. 655 (1898); *Moore v. Vallentine*, 77 N.C. 188 (1877)). "On the other hand, where the improvement is made by one who does not own the fee, such as a tenant, the law is indulgent and, in order to encourage industry, the tenant is permitted 'the greatest latitude' in removing equipment which he has installed upon the land." *Little*, 79 N.C. App. at 693, 340 S.E.2d at 513 (citing *Overman v. Sasser*, 107 N.C. 432, 12 S.E. 64 (1890)). Further, "[w]here the controversy is between parties connected to the transaction in some manner, as in a controversy between the owner of the land and the one who annexed the chattel, the subjective intent of the parties as evidenced by their words, conduct, or agreements, express or implied, is the relevant intent." *Little*, 79 N.C. App. at 693, 340 S.E.2d at 513.

In the instant case, the structure in question was erected in the public right-of-way by Homeowners' Association. Thus, the presumption that the structure was to become a part of the real property did not arise since the structure was not erected by the owner of the land. Also, we conclude that the subjective intent of the parties is relevant as plaintiff is the owner of the underlying land upon which this structure has been built.

"Summary judgment is generally not appropriate where intent or other subjective feelings are at issue." *Little*, 79 N.C. App. at 695, 340 S.E.2d at 514-15 (citing *Feibus & Co., Inc. v. Construction Co.*, 301 N.C. 294, 271 S.E.2d 385 (1980)). "The rule that intent should generally be a question of fact for the jury does not mean, however, that it should always be so." *Little*, 79 N.C. App. at 695, 340 S.E.2d at 515.

Here, the intent of the parties is not in dispute. This intent is evidenced by the terms of the license between the parties and the various responsibilities of the parties under the license. The structure was erected pursuant to a license that provided that the license was purely revocable and that defendant could at any time revoke same upon 30 days written notice of its intent to revoke. The license further provided: "Upon revocation of this license agreement, [Homeowners'

Association] shall, within 90 days . . . remove the Information Center and leave the property in the same condition it was in prior to construction . . . ." During the term of the license, neither plaintiff nor defendant was responsible for the repair and maintenance of this structure even though it was on their property and right-of-way, respectively. By the terms of the license, Homeowners' Association was to "indemnify and save harmless [defendant] . . . from any and all liability for injuries to, or death of any individual as a result of the construction or maintenance of said Visitor's Information Center, and . . . from any and all suits or claims which arise or may arise as a result of the construction or maintenance . . . ." Thus, the terms of the license show that the parties never intended for the structure to become a part of the land so as to pass with the real property; the structure was to remain personal property. Accordingly, the structure cannot be classified as a fixture.

As we conclude that the structure is neither an appliance nor a fixture, N.C. Gen. Stat. § 160A-296(a)(6) does not provide defendant with statutory authority to permit Homeowners' Association to build in the street right-of-way. *See Gregorie*, 243 N.C. at 370, 90 S.E.2d at 902-03. We recognize that the determination of whether something qualifies as a fixture is a fact-specific inquiry. Given the clear intent of the parties to this license that the structure constructed in the public right-of-way be completely removable and the responsibility of Homeowners' Association, we limit our holding to the facts of this case.

### N.C. Gen. Stat. § 160A-296(a)(8)

Defendant also contends that N.C. Gen. Stat. § 160A-296(a)(8) confers statutory authority for the agreement in question. N.C. Gen. Stat. § 160A-296(a)(8) provides:

(a) A city shall have general authority and control over all public streets, sidewalks, alleys, bridges, and other ways of public passage within its corporate limits except to the extent that authority and control over certain streets and bridges is vested in the Board of Transportation. General authority and control includes but is not limited to:

. . . .

(8) The power to grant easements in street rights-of-way as permitted by G.S. 160A-273.

N.C. Gen. Stat. § 160A-296(a)(8) (2003). Homeowners' Association and defendant clearly labeled their agreement a license. A license is "a permission, usually revocable, to commit some act that would otherwise be unlawful." *Black's Law Dictionary* 938 (8th ed. 2004). Whereas, an easement is "an interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose . . . . Unlike a lease or license, an easement may last forever . . . ." *Black's Law Dictionary* 548 (8th ed. 2004).

The agreement between Homeowners' Association and defendant did not pass an interest in land, as would be the case with an easement; rather, it only gave permission to Homeowners' Association to build a structure. Also, the agreement was revocable for any reason upon 30 days written notice. We conclude that the agreement between defendant and Homeowners' Association is a license and thus, N.C. Gen. Stat. § 160A-296(a)(8) does not provide statutory authority for defendant to permit Homeowners' Association to place a structure in the street right-of-way.

As we find no statutory authority that permits defendant to authorize the placement of a structure in the public street right-of-way, we conclude that defendant was without authority to enter into the license agreement with Homeowners' Association. Due to this conclusion, we do not address whether the structure created an obstruction of the right-of-way and/or a public nuisance. We reverse the trial court's entry of summary judgment for defendant and remand for entry of summary judgment in favor of plaintiff.

Reversed and remanded.

Judges HUDSON and GEER concur.